IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN
_____

PITNEY BOWES, INC.,

            Plaintiff,

                                       MEMORANDUM AND ORDER

   v.

                                            07-cv-470-jcs

DATA-PAC MAILING SYSTEMS CORP.
and RICHARD YANKLOSKI,

            Defendants.
_____

Plaintiff Pitney Bowes, Inc. ("P-B") commenced this patent infringement action against defendants Data-Pac Mailing Systems Corp. ("Data-Pac") and Richard Yankloski ("Yankloski") alleging that several of defendants' products infringe on plaintiff's United States Patents numbers 5,243,654 ("654 patent"), 5,377,268 ("268 patent"), 5,793,867 ("867 patent"), 5,355,020 ("020 patent") and 6,988,842 ("842 patent")(collectively the "patents in suit"). Jurisdiction is based on 28 U.S.C. § 1338(a). The matter is presently before the Court on defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404 and motion to dismiss Yankloski for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). The following facts are undisputed or most favorable to plaintiff.

BACKGROUND

Plaintiff is a Delaware corporation with its corporate offices in Connecticut. Plaintiff was founded in 1920 as a mailstream[1] technology company. Although plaintiff started with a postage-stamping machine it now provides all types of mailstream hardware and software solutions and services. During the 2006 calendar year plaintiff earned $5.8 billion in revenue and employed more than 35,000 employees in 130 countries.

Plaintiff has invested large amounts of money and time into the postage metering portion of its business and more specifically into development of its postal metering systems, which includes postal metering devices ("PSDs"). Plaintiff is one of only five companies in the United States that has been authorized by the United States Postal Service ("USPS") to provide PSDs.

Defendant Yankloski is President of defendant Data-Pac. Yankloski is a resident of the state of New York and Data-Pac's principal place of business and state of incorporation is also New York. Data-Pac was founded in 1976 and is a smaller family-owned and operated mailing products manufacturer that employs only ten individuals, six of them being Yankloski family members. Data-Pac's annual sales revenues are estimated at $1 million.

---

[1]Mailstream is a term used to define all of the mail and documents, both physical and digital, as well as packages that flow into and out of organizations and homes.

The majority of Data-Pac's sales have been to third-party distributors and its primary sales come from software products designed to save end users money on postage and shipping costs. In 2007 Data-Pac obtained approval from the USPS to sell PSDs. This approval made Data-Pac the most recently approved provider of PSDs. Plaintiff alleges that Data-Pac entered the PSD market by utilizing P-B's patented technology.

In May 2006, after several mailstream trade shows, Data-Pac sent a letter to P-B's vice president of marketing to follow up on conversations at the trade shows concerning creating a royalty-bearing license agreement between the companies that would allow certain Data-Pac products to interface with P-B's DM Infinity product line. On June 7, 2006 P-B responded to Data-Pac's letter by requesting a more specific licensing proposal because P-B would not grant a full portfolio license based on the fact that it owned the world's largest patent portfolio on postage metering technology. On June 26, 2006 Data-Pac responded with a more specific licensing proposal and it also asserted that it was "not aware that its proposed product offerings infringe any P-B patent." (2d Supplemental Decl. Yankloski, Ex. C.) Despite follow up communications by Data-Pac it never received a response from P-B concerning its June 26, 2006 letter.

On June 19, 2007 Data-Pac received a letter informing it that P-B believed that several Data-Pac products infringed on P-B

3

patents. After a meeting between the parties where P-B requested a written analysis of Data-Pac's position on infringement, Data-Pac provided a letter of analysis on July 20, 2007. On August 24, 2007 P-B filed its complaint in the Western District of Wisconsin alleging infringement of five of its patents by Data-Pac and Yankloski.

MEMORANDUM

A motion for transfer of venue is governed by 28 U.S.C. § 1404(a) which states: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." For transfer of venue to be proper it must be established that the case might have been brought in the transferee district and that the transfer is for the convenience of parties and witnesses and in the interest of justice. See Coffey v. Van Dorn Iron Works, 796 F.2d 217, 220 (7th Cir. 1986).

As set forth in defendants' motion, Yankloski disputes whether this Court has personal jurisdiction over him. However, defendants admit that they are both subject to personal jurisdiction in the Western District of New York and that venue would be proper in that same district. Plaintiff does not contest that venue would be proper in the Western District of New York. Accordingly, the Court's inquiry concerning venue focuses solely on "the

conveniences of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).

In ruling on defendants' motion to transfer venue the Court must consider all circumstances of the case using the three statutory factors as place holders in its analysis. <u>Coffey</u>, at 219 (citations omitted). Weighing of the factors takes consideration of the particular facts of each case and is "committed to the sound discretion of the trial judge." <u>Id.</u> Also, defendants bear the burden of establishing by reference to particular circumstances that the transferee forum is clearly more convenient. <u>Id.</u> at 219-220.

**A.   Convenience of the parties**

The Western District of Wisconsin is not plaintiff's home forum, instead plaintiff's home forum would be in a district court in Connecticut, which means that plaintiff's choice in forum receives no special deference when considering the convenience of the parties. <u>Doagle v. Bd. of Regents</u>, 950 F. Supp. 258, 259 (N.D. Ill. 1997). However, the Western District of New York is defendants' home forum as it is the district where Yankloski resides and where Data-Pac maintains its principal place of business. In general, conducting litigation in one's home forum is more convenient than conducting litigation else where, hence the label "home" forum. This case falls within that general understanding. Accordingly, the Western District of New York being

defendants' home forum and the Western District of Wisconsin being no parties' home forum weighs in favor of transfer to the Western District of New York for the convenience of the parties.

Defendants also point to the financial circumstances surrounding the parties as a factor favoring transfer to New York. Defendant is a small family owned and operated business that generates approximately $1 million in annual sales revenue. It is reasonable to believe that requiring a company like Data-Pac with a mere ten employees to litigate a case far outside its home forum, a case which may require several of its employees to miss work to attend the trial, would have a large, detrimental effect on such a small company.

However, the potential effect on Data-Pac contrasts with any minor effect a large company like P-B would experience if forced to litigate outside its home forum, which P-B would be doing regardless in which forum the litigation proceeds. P-B generates approximately $5.8 billion in revenue a year, as opposed to defendants' $1 million, and has the resources to keep minimal any negative effects accompanying litigation outside its home forum. Accordingly, the particular financial facts of this case weigh in favor of it being more convenient for the parties to transfer the case to the Western District of New York.

    **B.    Convenience of the witnesses**

Although traditional concerns surrounding the cost in obtaining the attendance of witnesses has been diminished by technological advancements, the location of non-party witnesses remains an important factor because often such witnesses will not testify without being compelled by a subpoena from the forum court. See Milwaukee Elec. Tool Corp. v. Black & Decker (N.A.) Inc., 392 F. Supp. 2d 1062, 1064 (W.D. Wis. 2005). "However, when all defendant's witnesses are its employees the location of those witnesses is not as important a factor." Adams v. Newell Rubbermaid Inc., No. 07-C-313-S, 2007 U.S. Dist. LEXIS 62512, at *5 (W.D. Wis. Aug. 21, 2007) (citation omitted). Also, depositions as opposed to live testimony tend to be satisfactory in addressing technical patent issues. Medi USA, L.P. v. Jobst Inst., Inc., 791 F. Supp. 208, 211 (N.D. Ill. 1992).

Defendants provide a list of eighteen non-party witnesses located outside the subpoena power of this Court but within the subpoena power of the Western District of New York. Although the importance of such non-party testimony will vary, defendants point specifically at two non-party witnesses as examples of witnesses who will provide relevant and necessary information on the manufacturing and development of the allegedly infringing products. Furthermore, defendants present as an important witness a non-party independent contractor, Sidney Gear, who played a key role in developing the accused products and is now, at seventy-seven years

of age, retired and living in the state of New York. Also, although not as important a factor, all defendants' employees who may be witnesses live in New York.

Plaintiff provided no witnesses, either employees or non-parties, who reside within the Western District of Wisconsin. Plaintiff's only argument asserts that there is no reason that all non-party witnesses cannot be deposed as opposed to testifying live in court. Although it is true that many of defendants' witnesses may be deposed that alone does not make the convenience to the witnesses a neutral factor in this case.

Plaintiff cites to Adams in support of its argument that the possibility of depositions neutralizes the convenience to the witnesses factor in a transfer of venue inquiry. 2007 U.S. Dist. LEXIS 62512, at *7. However, the facts in Adams contain an important difference from the current action. In Adams, all the defendant's witnesses were its employees which distinguishes the case from defendants' circumstances in this case where eighteen of defendants' witnesses are non-party witnesses. In Adams the defendant would most likely not have had to obtain any subpoenas, either for depositions or live testimony, because its witnesses were its employees. In contrast, defendants in the current action would be forced to go to the Western District of New York to obtain up to eighteen deposition subpoenas. Accordingly, the possibility of using depositions as opposed to live testimony of defendants'

witnesses does not neutralize the convenience of the witnesses factor.

The number and location of both defendants' non-party and employee witnesses and the lack of any witnesses being located in the Western District of Wisconsin suggests that the convenience of the witnesses in this case favors transfer to the Western District of New York.  Accordingly, defendants have provided reference to particular circumstances that demonstrate that the Western District of New York is clearly more convenient for the parties and witnesses.

### C. Interests of Justice

The interest of justice analysis involves the consideration of factors relating to "'the efficient administration of the court system' not the merit of the underlying dispute." Milwaukee Elec. Tool Corp., 392 F. Supp. 2d at 1065 (quoting Coffey, 796 F.2d at 221).  For example, one such permissible factor is the likelihood of a speedy trial.  Coffey, 796 F.2d at 221.  However, the significance of a speedy trial is a factor that varies depending on the circumstances of each case.  See Gemini IP Tech., LLC. v. Hewlett-Packard Co., No. 07-C-205-S, 2007 WL 2050983, at * 2 (W.D. Wis. July 16, 2007).

Plaintiff's argument against transfer focuses on its alleged need for a speedy resolution and the fact that the average for resolution of cases in this Court are three times faster than cases

9

resolved in the Western District of New York.[2]  Plaintiff alleges that a slower resolution of this case will impact its patent monopoly by allowing defendants to gain an irreversible advantage in the marketplace.  However, such reasons are contradicted by the circumstances surrounding this case.

It is difficult to accept that defendant, a small ten employee company, will gain an irreversible advantage in the marketplace against plaintiff, a large 35,000 employee company that boasts of having the world's largest patent portfolio on postage metering technology.  Although there inevitably will be some effect on plaintiff's patent monopoly, the difference in size between the companies along with the fact that defendants are very new to the PSD market which plaintiff has dominated for years supports that the effect will most likely not be irreversible if in fact there is infringement.  Also, plaintiff has merely provided conclusory statements that delay will cause it harm as opposed to for example providing an estimate of how many potentially infringing products have been or will be sold by defendants and how that would effect plaintiff.  Accordingly, the speedy trial factor does not weigh heavily against transfer.[3]

---

[2]The median time between filing a lawsuit and trial in the Western District of Wisconsin is 13.4 months.  The median time between filing a lawsuit and trial in the Western District of New York is 41.8 months.

[3]The Court also notes that if plaintiff is in serious danger of giving away an irreversible advantage over its patent monopoly,

10

Furthermore, although plaintiff argues for its need of a speedy trial it fails to address why it did not take action sooner when based on the discussions between plaintiff and defendants in the summer of 2006 it is reasonable to ascertain that plaintiff was aware of the potential infringement a year before filing this lawsuit. It appears insincere to assert a need for speedy resolution of a conflict when one has known of the potential conflict for a year or more before confronting the conflict. Accordingly, plaintiff's argument that the interests of justice support its need for a speedy trial is further weakened by its failure to act sooner despite knowledge of the potential infringement.

Finally, keeping the case in this district raises questions concerning personal jurisdiction as opposed to transferring the case to the Western District of New York where there are no personal jurisdiction issues. As this Court has previously noted, "[c]onservation of judicial resources and avoidance of unnecessary legal expenses are advanced by a transfer from a forum in which there is a question of personal jurisdiction to a district in which there are no such uncertainties." Imago Scientific Instruments Corp. v. Chism, No. 07-C-077-S, 2007 U.S. Dist. LEXIS 37034, at * 9 (W.D. Wis. May 17, 2007) (citation omitted). Furthermore, a

---

Although the Court doubts this assertion, plaintiff will be free to move for a preliminary injunction to stop defendants from continuing to sell the accused products.

11

court is permitted to transfer a case despite having a lack of personal jurisdiction over a party. Cote v. Wadel, 796 F.2d 981, 985 (7th Cir. 1986).

In this case, there are questions over whether this Court has personal jurisdiction over Yankloski. Without deciding the issue the Court notes that the personal jurisdiction questions are genuine and not conjured up merely to support transfer. Accordingly, the interests of justice weigh in favor of transfer.

In conclusion, defendants have demonstrated with reference to particular circumstances addressing the convenience of the parties and witnesses and the interests of justice in this case that transferring this case to the Western District of New York would clearly be more convenient.

ORDER

IT IS ORDERED that defendants motion to transfer venue to the Western District of New York is GRANTED.

IT IS FURTHER ORDERED that defendants motion to dismiss Yankloski for lack of personal jurisdiction is DENIED as moot.

Entered this 4th day of December, 2007.

BY THE COURT:

/s/

_____
JOHN C. SHABAZ
District Judge